UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:14-cr-57-HSM-SKL |
| | ) |
| JACKIE ALDER, | ) |
| | ) |
| Defendant. | ) |

**REPORT & RECOMMENDATION**

Before the Court is a motion to suppress filed by Defendant Jackie Alder ("Defendant") [Doc. 14], in which Defendant seeks to suppress the evidence seized during a search of his residence, specifically a shotgun found in a closet. Defendant argues the search was illegal because the officer did not obtain proper consent. Plaintiff United States of America ("the government") has filed a response in opposition [Doc. 18]. The motion to suppress was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b) [Doc. 15]. An evidentiary hearing on the motion to suppress was held on September 17, 2014. After fully considering the evidence and argument, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I.  FACTUAL BACKGROUND**

During the evidentiary hearing on September 17, 2014, the government presented the testimony of Officer Jeremy Waters, who was a patrol officer with the Whitwell Police Department ("WPD") on the day of the search at issue. Officer Waters' credibility is not contested by Defendant; rather, Defendant denies that he gave Officer Waters an unequivocal,

specific, and intelligent consent to the search. Pertinent testimony from the hearing is summarized below.[1]

On October 2, 2013, WPD received a 911 call regarding a domestic disturbance with a weapon at Defendant's residence in Whitwell, Tennessee. Officer Waters, who had been with the WPD for only a little over a year at the time, responded to the dispatch. When he arrived at the scene, there were two women standing outside the residence. One of the women was Felicia Aderholt, who was Defendant's girlfriend. The other woman was Ms. Aderholt's mother. Officer Waters engaged in a conversation with Ms. Aderholt, informing her that he was responding to the call about a domestic disturbance involving a weapon. Ms. Aderholt told him that she and Defendant had an argument, but that no weapon was involved. Officer Waters then asked Ms. Aderholt where Defendant was. She told Officer Waters that Defendant was across the street at his place of employment, a tire shop.

Officer Waters then walked over to Defendant's place of employment. Defendant was standing outside of one of the bays at the shop. Given the nature of living in, and being a police officer in, a small town, Officer Waters knew who Defendant was and that he was a convicted felon, although he had had no prior official encounters or trouble with Defendant. Officer Waters understood Defendant had served about four years in custody with the Tennessee Department of Corrections. Officer Waters approached Defendant and spoke to him in a normal conversational tone. Officer Waters, who was wearing his uniform, did not threaten Defendant or draw his gun during the "friendly" conversation. Defendant admitted to Officer Waters that he had been in an

---

[1] Three exhibits were entered into evidence during the evidentiary hearing: a photograph of Defendant's residence [Government's Exhibit 1], a judgment of conviction against Defendant for felony vandalism in Marion County, Tennessee, dated August 8, 2007 [Government's Exhibit 2], and a judgment of conviction against Defendant for felony aggravated burglary in Marion County, Tennessee, dated August 8, 2007 [Government's Exhibit 3].

argument with his girlfriend, but he also said no firearm was involved. Officer Waters then asked Defendant if there were any firearms in Defendant's house. Defendant informed Officer Waters that there was a shotgun in a rear closet of the house. Officer Waters asked Defendant if it was okay if he went into the house to get the shotgun, and Defendant said yes.

Officer Waters did not remember the exact words used, but he was unequivocal that he asked for and obtained consent from Defendant to go into the house to get the shotgun from the closet. Officer Waters did not inform Defendant of his constitutional rights prior to obtaining Defendant's consent to retrieve the shotgun because Defendant was not in custody. Officer Waters also did not inform Defendant that he had a right not to consent to the search. WPD does not provide forms for obtaining written consent for a search.

After Defendant said Officer Waters could obtain the shotgun, Officer Waters went back to the house, which was a warehouse converted into living space with an unusual layout. Ms. Aderholt was still outside with her mother. Officer Waters could not remember whether there were other officers present at that time. Officer Waters did not go into the house by himself, because there was a large pitbull dog in the house. Either Defendant or Ms. Aderholt led him through the house to retrieve the shotgun from the closet, but Officer Waters could not remember if it was Defendant or Ms. Aderholt.

Officer Waters was led straight to the closet. When he looked into the closet, he immediately saw the shotgun propped in the corner. No evidence was presented that any other area of the house was searched or any other evidence obtained. Officer Waters seized the shotgun and secured it in the trunk of his patrol car. After securing the firearm, Officer Waters arrested Defendant for possession of the shotgun because he knew Defendant was a felon.

Officer Waters prepared a report after the seizure of the shotgun and the arrest of

Defendant, but the report was not introduced into evidence by either party. Officer Waters testified his report included mention of the seized shotgun and ensuing arrest of Defendant, but he did not mention Defendant's consent. Officer Waters agreed that he should have included the consent in his report, and that it was a mistake not to include it.

## II.  ANALYSIS

In his motion to suppress, Defendant argued that he never gave consent to Officer Waters to enter and search the residence or to seize the firearm. Clarifying his argument at the hearing given the uncontested testimony, Defendant now argues the government has not met its burden to prove his consent was unequivocal, specific, and intelligently given.

The Fourth Amendment provides "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.[2] The Supreme Court has long recognized that "[a] man's home is his castle" and, specifically, that a right to be secure in one's home from intrusion is embodied by the Fourth Amendment. *Minnesota v. Carter*, 525 U.S. 83, 94 (1998) (Scalia, J., concurring) (emphasis omitted); *see United States v. Nelson*, 459 F.2d 884, 885 (6th Cir. 1972) (noting that the Fourth Amendment exists to ensure the inviolability of an individual's home). The Fourth Amendment prohibits a search of a suspect's residence without a proper warrant except in limited circumstances, such as a search conducted pursuant to consent. *See Florida v. Royer*, 460 U.S. 491, 497 (1983); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

"It is the Government's burden, by a preponderance of the evidence, to show through

---

[2] "[A] defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001) (citing *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988)). It is undisputed that Defendant had a legitimate expectation of privacy in the residence.

clear and positive testimony that valid consent was obtained." *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010) (internal quotation marks omitted). Consent is valid only if it is voluntary—i.e., "unequivocal, specific and intelligently given, [and] uncontaminated by any duress or coercion." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (citations and internal quotation marks omitted). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion . . . is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227; *accord Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *United States v. McCauley*, 548 F.3d 440, 446 (6th Cir. 2008). Factors to be considered when examining the totality of the circumstances include: "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999); *see also Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 830 (6th Cir. 2007) (quoting *United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988)) ("Relevant factors in this analysis include the suspect's 'youth, lack of education or low intelligence, the lack of any warnings regarding the accused's constitutional rights, as well as evidence of duress or coercion, such as, deprivation of food or sleep and prolonged detention or questioning.'"); *United States v. Haynes*, 301 F.3d 669, 682 n.6 (6th Cir. 2002) (finding that the suspect's "experience with the criminal justice system and lack of rough treatment" were factors relevant in assessing the voluntariness of consent).

Here, Defendant was born in 1986 and had prior experience with the criminal justice system [Government's Exhibits 2 & 3]. Thus, Defendant was an adult and had some experience with police. While Officer Waters did not inform Defendant of his right to refuse

consent, police have no obligation to inform a suspect of the right to refuse. *See United States v. Beauchamp*, 659 F.3d 560, 572 (6th Cir. 2011). "[T]he absence of such a warning is considered in the totality of the circumstances analysis," however. *Id.* Officer Waters did not detain Defendant, but merely had a brief conversation with him. Defendant was cooperative and friendly with Officer Waters. Officer Waters did not threaten Defendant or draw his weapon. It is undisputed that Defendant freely told Officer Waters there was a firearm in the residence, and gave Officer Waters the specific location of the firearm within the residence where Officer Waters could find the shotgun. It is also undisputed that Defendant gave Officer Waters permission to go and get the gun.

At the hearing, Defendant's counsel essentially argued that it did not "make sense" for Defendant to give consent to Officer Waters when he asked to retrieve the gun, so the consent must not have been intelligent. The Constitution, however, does not exist to deter imprudent decisions by suspects; it protects them only from unreasonable police conduct. *See United States v. Lazar*, 604 F.3d 230, 237-38 (6th Cir. 2010) (explaining that the applicability of the exclusionary rule turns on the culpability of police conduct and the deterrent effect of exclusion); *United States v. Childs*, No. 04-50065, 2006 WL 3060123, at *3 (E.D. Mich. 2006) (holding that the defendant's consent, while "ill-advised," was voluntary). Given the specific facts of this case, I **FIND** no evidence of any duress or coercion in the request for consent. I further **FIND** the evidence meets the government's burden to prove Defendant's consent was unequivocal, specific, and intelligently made. Thus, the motion to suppress fails on this ground, and it is not necessary to address the government's alternative "good faith" argument.

6

Case 1:14-cr-00057-HSM-SKL   Document 21   Filed 09/19/14   Page 6 of 7   PageID #: 66

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[3] that Defendant's motion to suppress [Doc. 14] be **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).